UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

C<small>EDRIC</small> R. J<small>OYCE</small>,

              Plaintiff,           Case No. 2:20-cv-159

v.                                   Honorable Paul L. Maloney

U<small>NKNOWN</small> L<small>IBBY</small> et al.,

              Defendanta.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

**I.     Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following URF

officials: Correctional Officer Unknown Libby; Grievance Coordinator M. McLean; Resident Unit Manager (RUM) T. Corey-Spiker; Assistant Deputy Wardens (ADWs) R. Batho and J. Corrigan; and Warden Connie Horton.

Plaintiff alleges that, in late April to early May of 2019, he suffered asthma attacks for several days. He was placed on mandatory breathing treatments three times each day. On May 4, 2019, at approximately 6:30 p.m., while Plaintiff was receiving nebulizer treatments in health services, he suffered a seizure. Plaintiff was taken to War Memorial Hospital for treatment. When he returned from the hospital on May 5, 2019, Plaintiff was placed in Quarry Unit (Segregation), cell 9.

Plaintiff complains that he was issued three misconduct tickets based on his medical condition. Before Plaintiff was transported to the hospital, Defendant Libby issued the first misconduct ticket for disobeying a direct order. When Plaintiff returned from the hospital, he repeatedly asked Defendant Libby for his glasses, because he was blind in one eye and had only partial vision in the other. Defendant Libby told Plaintiff to ask someone else.

After returning from the hospital, Plaintiff did not feel like eating his lunch. However, he kept a cup of milk and the dessert from his lunch tray. He later ate the dessert. When Defendant Libby discovered the cup and dessert container in Plaintiff's cell, he demanded their return. Plaintiff gave Defendant Libby the items, explaining that he did not know that he could not have them. He again asked Libby for his glasses and "K.O.P.s,"[1] but Libby ignored him. Defendant Libby placed Plaintiff on food loaf[2] for the infraction. Plaintiff complains that, because

---

[1] Although Plaintiff does define "K.O.P.," he appears to refer to his "Keep on Person" medications.

[2] Food loaf is prepared according to standardized recipes for food loaves maintained by the Food Service Director. It is served in a wrapper, without a tray. Food loaf must meet the nutritional standards for all prison meals. MDOC Policy Directive 04.05.120 ¶ UU. A prisoner in segregation may be placed on food loaf if the prisoner is misusing food, serving trays or utensils, or if he fails or refuses to return uneaten food, trays, or dishes through the food slot. *Id.*, ¶ RR. The placement on food loaf must be approved by the warden or his designee, for a period of time not to

he had never been in Quarry Unit and did not have his glasses, he was unable to read the rules and did not know that he was violating the rules by keeping his cup.

Plaintiff also complains that he was unable to eat the food loaf, which was served to him for eight meals, because he had food allergies and did not know what was in the food loaf. As a result of not eating, Plaintiff had another seizure. He was taken back to War Memorial Hospital.

On May 5, 2019, while Petitioner was housed in Quarry Unit, Defendant Libby opened Plaintiff's sealed duffel bag, on the pretense of looking for Plaintiff's glasses. Libby wrote a Class-3 Misconduct against Plaintiff for possessing contraband (Misconduct Report, ECF No. 1-1, PageID.30.), and he issued a contraband removal form for several items: a set of headphones; a law reference book; two whistles; two chalks and tips for pool cues; and two homemade books or magazines depicting sexual penetration (Contraband Removal Record, ECF No. 1-1, PageID.31). The contraband removal form indicated that the headphones were broken, the law book had another inmate's name on it, and the magazines were contraband. Correctional Officer Baseus reviewed the misconduct with Plaintiff on May 6, 2019. Plaintiff asked to be heard on the contraband misconduct charge, but he was given no indication as to when the hearing would be held. Plaintiff spoke with Defendants RUM Corey-Spiker and ADW Corrigan about the lack of a hearing, but neither took action.

---

exceed seven days. *Id.*, ¶ SS. When notified that a prisoner is being placed on food loaf, the Food Service Director or designee must contact appropriate health care staff to determine if the prisoner has food allergies that might be affected by the food loaf, and, if so, a food loaf containing such allergens may not be given to the prisoner. *Id.*, ¶ TT.

Plaintiff complains that he subsequently explained to Defendant Corey-Spiker that, even if he had received a rule book for Quarry Unit, he would not have been able to read it, since he did not have his glasses. Defendant Corey-Spiker nevertheless took no action on the misconduct charge.

Plaintiff subsequently sent a grievance to Defendant McLean, who returned the grievance to Plaintiff to be rewritten, because it raised multiple unrelated issues. When Plaintiff submitted a rewritten grievance, Defendant McLean rejected it as untimely. (Grievance Rejections, ECF No.1-1, PageID.15, 17.) Defendant Horton upheld the rejection at Step II.

Upon his release from Quarry Unit, Plaintiff spoke with Prisoner Counselor (PC) Butler, who advised Plaintiff to kite Defendant Corey-Spiker about holding a hearing. Several days later, Plaintiff again told PC Butler that he needed his possessions returned. Butler suggested that Plaintiff send a kite to Defendant Libby. Plaintiff received no reply from either Defendant. Plaintiff then sent two kites each to Defendants ADW Corrigan and Warden Horton. Plaintiff sent a grievance to Defendant Grievance Coordinator McLean, who rejected it. Defendants Assistant ADW Batho and Warden Horton affirmed the rejection at Step II. Plaintiff pursued the Grievance to Step II, without success.

Plaintiff also asserts that Defendant Libby never placed the contraband in the unit contraband locker. In addition, although Defendant Libby purportedly never found Plaintiff's glasses, the glasses were left on top of the duffel bag. Several days after Plaintiff's property was taken, he asked Correctional Officer Miller if he could give Plaintiff back his glasses. Miller found the glasses on May 8, 2019, and returned them to Plaintiff.

Plaintiff complains that he has never been heard on the misconduct charge and his property has never been seen. Plaintiff requested a reimbursement form, but it was denied. Plaintiff filed a grievance and wrote to the Attorney General.

Plaintiff alleges that Defendant Libby placed him on food loaf and denied him his glasses for many days, in violation of the Eighth Amendment. He also alleges that Defendants violated his right to due process when they deprived him of his property without a hearing, deprived him of a hearing on the misconduct charge of possessing contraband, and failed to properly process his grievances. In addition, he alleges that Defendant Libby deprived him of due process by placing him on food loaf without a hearing.

Plaintiff seeks compensatory and punitive damages.

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court

to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Deprivation of Property Without Due Process

Plaintiff complains that Defendant Libby confiscated his property and failed to store it properly, leading to Plaintiff's permanent loss of the property without due process. Plaintiff alleges that the remaining Defendants deprived him of due process by not holding a hearing on the contraband removal and miconduct charge and by refusing to process his grievances. Further, Plaintiff appears to suggest that Defendant Libby placed him on food loaf without due process.

#### A. Taking of property

Plaintiff complains that Defendants took and kept his personal property without due process of law. Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an

6

adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013). Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480.

Although Plaintiff alleges that he was denied one form for seeking reimbursement from the State of Michigan, he does not allege that he was deprived of any remedy. Nor does he provide any reason why a state-court action would not afford him complete relief for the

deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's due process claim concerning the confiscated property will be dismissed.

### B. Rejection or denial of grievances

Plaintiff appears to allege that he was denied due process by Defendants McLean, Batho, Corrigan, and Horton when they either rejected his grievances at Step I or upheld the grievance rejection on appeal at Step II of the grievance process.

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995).

Plaintiff has no due process right to file a prison grievance or to have it resolved in his favor. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

### C. Misconduct hearing

Plaintiff complains that he never received a hearing on the Class-III misconduct charge of possessing contraband. *See* MDOC Policy Directive 03.03.105, Attach. C (eff. July 1, 2018). He contends that the failure to conduct a hearing deprived him of due process.

Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B, a Class-I misconduct is a "major" misconduct and Class-II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class-I misconduct. *See id.*, ¶ AAAA. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 F. App'x 678, 680

9

(6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Plaintiff, therefore, fails to state a due process claim arising from his Class-III misconduct conviction for possession of contraband.

### D. Food loaf

Plaintiff also cannot state a due process claim arising from his placement on food loaf. Plaintiff enjoys no constitutional or state-created right to be free from a temporary diet of food loaf. As earlier discussed, the Supreme Court has held that state created liberty interests "will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 483; *see also Rimmer-Bey*, 62 F.3d at 789-91. A temporary food-loaf diet is not an atypical and significant hardship for segregation prisoners who have engaged in misconduct in the handling of their food and food containers. *See Griffis v. Gundy*, 47 F. App'x 327, 328 (6th Cir. 2002); *Turnboe v. Gundy*, 25 F. App'x 292, 293 (6th Cir. 2001); *Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541 (6th Cir. Feb. 1, 1996); *Johnson v. Gummerson*, No. 99-0071, 1999 WL 822523, at *1 (2d Cir. Sept. 24, 1999). Plaintiff therefore fails to state a claim for violation of his due process rights.

## IV. Eighth Amendment

Plaintiff alleges that Defendant Libby violated his rights under the Eighth Amendment by depriving him of his glasses for three or four days. Plaintiff also alleges that, by placing Plaintiff on food loaf for three days, Defendant Libby subjected him to cruel and unusual punishment under the Eighth Amendment.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-

10

46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35-37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his

11

knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### A. Food loaf

Plaintiff suggests that Defendant Libby demonstrated deliberate indifference to Plaintiff's serious physical needs when Libby placed Plaintiff on food loaf. Plaintiff asserts that, because he was afraid of the presence of potential allergens in the food loaf, he did not eat for eight meals. Not eating, Plaintiff alleges, triggered a second seizure.

As discussed, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Id.* at 348. With regard to food, prisoners must receive adequate nutrition to maintain normal health; the food need not be tasty or aesthetically pleasing. *See Cunningham v. Jones*, 567 F.2d 653, 659-60 (6th Cir. 1977). The Sixth Circuit repeatedly has held that a diet of food loaf does not violate the Eighth Amendment because nutritional and caloric requirements are met. *See, e.g.*, *Griffis v. Gundy*, 47 F. App'x 327, 328 (6th Cir. 2002); *Payton-Bey v. Vidor*, No. 94-2472, 1995 WL 603241, at *1 (6th Cir. Oct. 12, 1995); *Hinton v. Doney*, No. 93-2050, 1994 WL 20225, at *2 (6th Cir. Jan. 26, 1994); *Boswell v. Meyers*, No. 89-2144, 1990 WL 109230, at *1 (6th Cir. Aug. 2, 1990).

Although Plaintiff suffered physical symptoms from refusing to eat, his suffering was self-imposed. Adequate food was available and he chose not to eat it. Plaintiff complains that he was afraid of experiencing an allergic reaction to the food loaf, but he alleges no facts suggesting that he actually was allergic to the food loaf, particularly when policy expressly requires

the Food Service Director to confirm with health care staff that any prisoner receiving food loaf is not allergic to anything in the loaf. MDOC Policy Directive 04.05.120, ¶ TT. More importantly, Plaintiff fails to allege facts suggesting that Defendant Libby or any other Defendant was aware of a risk to Plaintiff from allergens in the food loaf and was deliberately indifferent to that risk. Therefore, Plaintiff fails to state an Eighth Amendment claim based on his placement on food loaf.

### B. Glasses

Plaintiff alleges that Defendant Libby failed to return his glasses to him for three or four days, ostensibly in violation of the Eighth Amendment.

Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)).

Although Plaintiff alleges that he needs glasses to read, due to his blindness in one eye and reduced vision in the other, the allegation that he was deprived of his glasses for three or four days supports a conclusion that he suffered mere temporary inconvenience, as opposed to the serious risk of harm required by the Eighth Amendment. *See, e.g., Malone v. Mecrosvy*, No. 1:16-cv-833, 2016 WL 7015832, at *3 (S.D. Ohio Oct. 19, 2016) (holding that deprivation of prisoner's glasses for eight days fails to state Eighth Amendment claim); *Pendermon v. Jones*, No. 5:20-32-WOB, 2020 WL 495512, at *1 (E.D. Ky. Jan. 30, 2020) (holding that, while an extended delay in receiving glasses might support an Eighth Amendment claim, a 30-day delay did not reach the

constitutional level). Because Plaintiff alleges merely a temporary deprivation of his glasses, he fails to state an Eighth Amendment claim.

### V.     Supervisory Liability

Plaintiff's claims against Defendants McLean, Batho, Corrigan, and Horton fail to state a claim for an additional reason. Plaintiff's only allegations against these Defendants are that they failed to adequately respond to his grievances and kites or failed to supervise their subordinates. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants McLean, Batho, Corrigan, and Horton engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them for this additional reason.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28

14

U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   October 13, 2020                                   /s/ Paul L. Maloney
                                                            Paul L. Maloney
                                                            United States District Judge